UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DONALD DANIELS,

Plaintiff,

-against-

SHARONDA CARLOS, et al.,

Defendants.

**INITIAL REVIEW ORDER**

3:26-cv-1199 (VDO)

Self-represented plaintiff Donald Daniels is a sentenced inmate housed at MacDougall-Walker Correctional Institution of the Connecticut Department of Correction ("DOC").[1] He initiated this action by filing a Complaint *pro se* and *in forma pauperis* to assert claims for violation of his constitutional rights while housed at Cheshire Correctional Institution ("Cheshire") under 42 U.S.C. § 1983 against DOC Commissioner Sharonda Carlos, Cheshire Warden Reis (former), Cheshire Warden John Doe 1, Cheshire Deputy Warden Kenny, Cheshire Correctional Officer Agusto, State Police Colonel Daniel Loughman, Department of Emergency Services and Public Protection ("DESPP") Commissioner Ronnell Higgins, State Police Dispatcher John Doe 2, and State Police Dispatcher Jane Doe.[2] Plaintiff sues all

[1] The court takes judicial notice of publicly available information on the DOC website showing that Plaintiff was sentenced on December 12, 2018. https://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=366208 (last visited on Sept. 10, 2026). *See, e.g., Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Kelley v. Quiros*, No. 3:22-cv-1425 (KAD), 2023 WL 1818545, at *2 (D. Conn. Feb. 8, 2023) (taking judicial notice of state prison website inmate locator information). In addition, a review of the Connecticut judicial website reveals that Plaintiff has served several terms of incarceration within DOC for criminal convictions during the last nine years. *See* https://www.jud2.ct.gov/crdockets (last visited February 12, 2026).

[2] Under Rule 10(a) of the Federal Rules of Civil Procedure, a complaint must include the names of all parties in the case caption. *See* Fed. R. Civ. P 10(a). Thus, the court considers the individuals listed as the complaint's list of parties to be defendants in this action.

defendants under 42 U.S.C. § 1983 in their individual and official capacities for violating his constitutional rights. He seeks both damages and equitable relief.[3]

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, the court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

The court has thoroughly reviewed all factual allegations in the Complaint and conducted an initial review of the allegations therein pursuant to 28 U.S.C. § 1915A.

## I. FACTUAL BACKGROUND

While the court does not set forth all of the facts alleged in Plaintiff's Complaint, it summarizes his basic factual allegations here to give context to its rulings below.

Plaintiff has complained to DOC officials that correctional officers have invited him to engage in a physical altercation and that such misconduct commonly occurs when inmates interact with certain correctional officers.[4]

---

[3] Compl., ECF No.1, ¶¶ 39-42, pp. 22-26.

[4] Compl. ¶¶ 14-15.

On June 12, 2026, Correction Officer Agusto conducted a cell search that appeared to be a sham.[5] During the search, he directed profanities toward Plaintiff, used a wireless communication device to photograph Plaintiff (which is prohibited under Connecticut statutory law), and threatened Plaintiff with harm. *Id.* Upon Plaintiff's request, another correctional officer contacted a lieutenant, but supervisory staff refused to respond or to address Plaintiff's complaint.[6]

Plaintiff asked Officr Agusto to delete the photograph, but Agusto replied that he would make Plaintiff's photograph a screen saver and made remarks that threatened Plaintiff and his family.[7]

Plaintiff's telephone call to the Connecticut State Police was answered by Dispatcher John Doe 2, who acted under the authority of DESPP Commissioner Higgins and State Police Colonel Loughman.[8] Dispatcher Doe 2 refused to accept or document Plaintiff's criminal complaint; he refused to take any action because the conduct did not include Prison Rape Elimination Act allegations.[9]

---

[5] *Id.* ¶ 18.

[6] *Id.* ¶¶ 21.

[7] *Id.* ¶¶ 22.

[8] *Id.* ¶¶ 23-24.

[9] *Id.* ¶ 24.

Later in the evening during the third shift at Cheshire, Plaintiff informed Lieutenant Gonzales about Officer Agusto's conduct.[10] He responded that it was not his shift and to leave him out of it. *Id.*

On June 13, 2026, Plaintiff mailed written complaints concerning the events of June 13, 2026. *Id.* ¶ 26.

On July 4, Officer Agusto conducted another search of Plaintiff's cell to retaliate against Plaintiff for reporting his misconduct to supervisory staff (who failed to take any corrective action).[11] Plaintiff saw Officer Agusto remove a cellular telephone from his pocket while closing the cell door.[12] Plaintiff believed he was breaking state law and took action to report the misconduct. *Id.*

Plaintiff requested two different correctional officers to contact a lieutenant so that he could report Officer Agusto's misconduct.[13] Both officers refused to do so. Plaintiff called the Connecticut State Police and spoke to Dispatcher Jane Doe.[14] Plaintiff reported Officer Agusto's unlawful possession and use of a cell phone within the correctional facility. [15]After Dispatcher Jane Doe notified prison officials of the incident, Officer Agusto was removed

---

[10] *Id.* ¶ 25.

[11] *Id.* ¶ 27.

[12] *Id.* ¶ 28.

[13] *Id.* ¶ 29.

[14] *Id.* ¶ 30.

[15] *Id.* ¶ 31.

from the housing unit.[16] However, Jane Doe failed to dispatch state police officers to investigate Plaintiff's reports despite the information from Plaintiff about Officer Agusto's use of the cell phone within Cheshire.[17]

Later that evening, Plaintiff's cellmate discovered that Officer Agusto had removed and discarded his personal photographs, including photographs of his deceased family members.[18] A lieutenant later allowed Plaintiff's cellmate to retrieve the photographs from the trash.[19] The lieutenant photographed the recovered items to document the evidence and preserve evidence of the photographs' destruction and disposal.[20]

## II. LEGAL STANDARD

Under 28 U.S.C. § 1915A, courts must review prisoner civil complaints in which a prisoner seeks redress from a governmental entity and dismiss any portion that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2).

---

[16] *Id.* ¶¶ 31-32.

[17] *Id.* ¶ 32.

[18] *Id.* ¶ 33.

[19] *Id.*

[20] *Id.* It is not entirely clear from Plaintiff's allegations whether the photographs were the property of the Plaintiff or his cellmate, or whether they were actually destroyed.

Although highly detailed allegations are not required, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This plausibility standard is not a "probability requirement" but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.*

In undertaking this analysis, the court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). However, the court is "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678.

With respect to *pro se* litigants, it is well-established that "[p]ro se submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (per curiam)). However, *pro se* litigants are still required to comply with Rule 8 of the Federal Rules of Civil Procedure. *See, e.g.*, *Wynder v. McMahon*, 360 F.3d 73, 79 n.11 (2d Cir. 2004) ("[T]he basic requirements of Rule 8 apply to self-represented and counseled plaintiffs alike."). Rule 8 requires that a complaint contain "a short and plain

statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and provide "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (alteration in original). A statement of claim that is not short and direct places "an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage.'" *Harden v. Doe*, No. 19-CV-3839(CM), 2019 WL 2578157, at *2 (S.D.N.Y. June 24, 2019) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)) (internal quotation marks and citation omitted).

## III. DISCUSSION

Plaintiff's Complaint asserts claims of Eighth Amendment violation against Cheshire Correction Officer Agusto and Fourteenth Amendment Equal Protection Clause violations against DOC Commissioner Carlos, Cheshire Warden John Doe 1, Cheshire Deputy Warden Kenny State Police Colonel Daniel Loughman, DESPP Commissioner Higgins, former Cheshire Warden Reiss, State Police Dispatcher Doe 2, and State Police Dispatcher Jane Doe. Compl. at ¶¶ 34-36, 38. This Initial Review Order also addresses whether Plaintiff's Complaint raises any plausible claims of Fourth Amendment violation, First Amendment retaliation, and Fourteenth Amendment Due Process Clause violation.

"The common elements to all § 1983 claims are: '(1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.'" *Lee v. City of Troy*, 520 F. Supp. 3d 191, 205 (N.D.N.Y. 2021) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).

It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). "[A] plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official." *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020).

The court first considers whether Plaintiff has stated a plausible Fourth Amendment claim against Correction Officer Agusto.

**A. Fourth Amendment Violation**

Plaintiff complains about Officer Agusto's conduct during two cell searches.[21] The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. While "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell," *Hudson v. Palmer,* 468 U.S. 517, 526 (1984), "inmates do retain a limited right to bodily privacy," *Covino v. Patrissi,* 967 F.2d 73, 78 (2d Cir. 1992). Thus, in the prison context, the Fourth Amendment proscribes unreasonable strip searches. *See Bell v. Wolfish*, 441 U.S. 520, 558 (1979); *Harris v. Miller*, 818 F.3d 49, 58 (2d Cir. 2016). The following four factors should be considered to decide if a prison search was reasonable: "(1) the scope of the intrusion; (2) the manner in which it was conducted; (3) the justification for initiating it; and (4) the place in which it was conducted." *Harris*, 818 F.3d at 58 (quoting *Bell*, 441 U.S. at 559). A strip search violates the Fourth Amendment "if it is

[21] Compl. ¶¶ 18-22, 27-29

unrelated to any legitimate penological goal or if it is designed to intimidate, harass, or punish." *Jean-Laurent v. Wilkerson*, 438 F. Supp. 2d 318, 323 (S.D.N.Y. 2006) (collecting cases), *aff'd*, 461 F. App'x 18 (2d Cir. 2012).

No allegations suggest that Plaintiff was subjected to a search that infringed upon his bodily privacy. Thus, the Fourth Amendment does not apply to Plaintiff's complaint about Officer Agusto's conduct. The court next considers whether Plaintiff has stated any plausible claims under the Eighth Amendment.

**B. Eighth Amendment**

The Eighth Amendment protects sentenced prisoners from "cruel and unusual punishment" at the hands of prison officials. *See Wilson v. Seiter*, 501 U.S. 294, 296–97 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

To state his Eighth Amendment claims, Plaintiff must allege facts sufficient to satisfy both an objective element and a subjective element. The objective component requires a showing that "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 303 (1991)). Analysis of the objective component is context specific, requiring review of the conduct alleged against "contemporary standards of decency." *Id.* at 9 (quoting *Estelle*, 429 U.S. at 103). The subjective component requires a plaintiff to show that "the defendant official acted with a sufficiently culpable state of mind, such as deliberate indifference to inmate health or safety." *Edwards v. Quiros*, 986 F.3d 187, 192 (2d Cir. 2021) (quoting McCray v. Lee, 963 F.3d 110, 117 (2d Cir. 2020)). "Deliberate indifference is more than negligence—it requires a showing that the prison official 'kn[e]w of, and disregard[ed], an excessive risk to inmate health or safety' from the challenged

condition of confinement." *Id.* (quoting *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012)) (alterations in original).

**1. Verbal Harassment**

Plaintiff's factual allegations reflect that Officer Agusto subjected Plaintiff to verbal harassment.[22] But verbal harassment generally does not rise to the level of a constitutional violation. *See Cole v. Fischer*, 379 F. App'x 40, 43 (2d Cir. 2010) ("[V]erbal harassment, standing alone, does not amount to a constitutional deprivation ...."); *Cuoco v. Moritsugu,* 222 F.3d 99, 109 (2d Cir. 2000) (noting that "rudeness and name-calling does not rise to the level of a constitutional violation."). Courts generally dismiss Eighth Amendment claims based on prison officials' comments absent some other exacerbating circumstance. *See, e.g., Willey v. Kirkpatrick*, 801 F.3d 51, 70 (2d Cir. 2015) (indicating that a plaintiff's "psychological pain and resulting suicide attempt" caused by harassment may be actionable despite leaving no physical injury); *Green v. City of New York Dep't of Corr.*, No. 06CIV.4978(LTS)(KNF), 2008 WL 2485402, at *6 (S.D.N.Y. June 19, 2008) (dismissing an Eighth Amendment claim where verbal threats were "unaccompanied by any physical act or any indication that the threat will be carried out."); *Burns v. Martuscello*, 890 F.3d 77, 91 (2d Cir. 2018) (noting that "a number of courts have found an Eighth Amendment violation where a guard publicly labels an inmate as a snitch, because of the likelihood that the inmate will suffer great violence at the hands of fellow prisoners.").

---

[22] Compl. ¶¶ 18, 22.

Although Officer Agusto's threatening comments may have caused Plaintiff discomfort, the alleged facts do not present any exacerbating circumstances. Accordingly, any Eighth Amendment verbal harassment claim is not plausible.

**2. Harassing Cell Searches**

Plaintiff's allegations indicate that Officer Agusto conducted two cell searches for the purpose of harassing Plaintiff and that he disposed of and may have destroyed Plaintiff's personal photographs during the second cell search.[23] These allegations are sufficient to support a plausible violation of the Eighth Amendment. *See Doyle v. Santiago*, No. 3:19CV901(MPS), 2019 WL 5298147, at *8 (D. Conn. Oct. 18, 2019) (emphasis added) (searches are actionable under the Eighth Amendment "*only* if they lack any legitimate penological interest and are intended solely to harass the inmate."); *see also Madison v. Crowley*, No. 19CV6554 FPG, 2020 WL 2542636, at *13 (W.D.N.Y. May 19, 2020) (allegations of cell search with vandalization, destruction of personal property, and seizing his legal documents may state an Eighth Amendment claim).

Plaintiff may proceed on his Eighth Amendment claim against Officer Agusto in connection with Officer Agusto to harass Plaintiff through cell searches without a legitimate purpose for further development of the record.

---

[23] Compl. ¶¶ 18-22, 27-28, 33.

### C. First Amendment Retaliation

Plaintiff's allegations suggest that Officer Agusto conducted two cell searches as retaliation for Plaintiff making written complaints or grievances about his and other correctional officers' alleged misconduct.[24]

"Courts properly approach prisoner retaliation claims 'with skepticism and particular care,' because 'virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.'" *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (quoting *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001). To prevail on a First Amendment retaliation claim, a plaintiff must demonstrate: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (quoting *Dawes*, 239 F.3d at 492); *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019).

The Second Circuit has long viewed the filing of prison grievances as a protected activity satisfying the first element of a First Amendment retaliation claim. *Davis*, 320 F.3d at 352 (reasoning that the plaintiff who filed a grievance against the prison official sufficiently satisfied the first element, "[s]ince the filing of prison grievances is a constitutionally protected activity"); *Brandon*, 938 F.3d at 40 (same). Thus, Plaintiff has satisfied the first element of the analysis.

---

[24] Compl. ¶¶ 16-18, 26-27.

Relevant to the second element, the Second Circuit has "defined 'adverse action' *objectively*, as retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising ... constitutional rights.'" *Gill*, 389 F.3d at 381 (quoting *Davis*, 320 F.3d at 346) (emphasis in original). If the defendant's action does not have this deterring effect, "the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." *Dawes*, 239 F.3d at 493. The court's inquiry "must be tailored to the different circumstances in which retaliation claims arise, bearing in mind that prisoners may be required to tolerate more than average citizens before a retaliatory action taken against them is considered adverse." *Nelson v. McGrain*, 596 F. App'x 37, 38 (2d Cir. 2015) (summary order) (quoting *Davis*, 320 F.3d at 353).

District courts in this Circuit have held that wrongful conduct occurring in the course of a retaliatory cell search *can* constitute an adverse action for purposes of a First Amendment retaliation claim if that conduct would meaningfully deter a prisoner from engaging in a protected activity. *Rodriguez v. McClenning*, 399 F. Supp. 2d 228, 239–40 (S.D.N.Y. 2005) (explaining that, although the plaintiff "had no constitutional right to be free from cell searches of any kind, including retaliatory searches," he could maintain a retaliation claim for the defendant's allegedly retaliatory conduct "*in conjunction* with the cell search" (emphasis added)); *Phelan v. Thomas*, No. 9:10-CV-11 (GLS/DJS), 2017 WL 519246, at *3 (N.D.N.Y. Feb. 8, 2017) ("Adverse action, as it relates to a retaliatory cell search, requires more than a search alone.... Indeed, the plaintiff must demonstrate a search and 'other wrongful conduct,' such as the destruction or confiscation of property, that evinces the requisite deterrent of a similarly situated inmate of ordinary firmness from exercising his or her constitutional right." (citation omitted)); *Stewart v. Richardson*, No. 15

CV 9034 (VB), 2016 WL 7441708, at *5 (S.D.N.Y. Dec. 27, 2016) (holding that a plaintiff stated a retaliation claim arising from the defendant's allegedly retaliatory cell search and destruction of personal property).[25] Affording liberal construction to Plaintiff's allegations, the court concludes he has alleged conduct by Agusto that would plausibly deter a "similarly situated" prisoner "of ordinary firmness" from filing prison grievances. *See Dawes*, 239 F.3d at 493; *Gill*, 389 F.3d at 381.

As for the third element, a plaintiff must allege but-for causation. *Crenshaw v. Ross*, No. 25-CV-479 (SFR), 2025 WL 3514682, at *5 (D. Conn. Dec. 8, 2025) (citing *Nieves v. Bartlett*, 587 U.S. 391, 399 (2019) (finding that causation in a First Amendment retaliation claim "must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive")). To assess whether a plaintiff has but-for causation, the court may consider temporal proximity between the protected activity and the alleged retaliation. *See A.S. v. City Sch. Dist. of Albany,* 585 F. Supp. 3d 246, 269–70 (N.D.N.Y. 2022). Plaintiff's allegations suggest that Agusto conducted the retaliatory cell searches shortly after Plaintiff exercised his right about correctional officer misconduct, including that of Officer Agusto. Accordingly, Plaintiff has alleged facts to support an inference that a retaliatory animus caused the retaliatory conduct.

---

[25] Several courts have also held that a retaliatory cell search, standing alone, does not constitute an adverse action for the purpose of a First Amendment retaliation claim. *See, e.g.*, *Harnage v. Brighthaupt*, No. 3:12-CV-1521 (AWT), 2016 WL 10100763, at *6 (D. Conn. June 3, 2016) (collecting cases for the proposition that "a retaliatory cell search is insufficient to support a First Amendment retaliation claim" under *Hudson*), *aff'd*, 720 F. App'x 79 (2d Cir. 2018) (summary order).

Plaintiff may proceed for damages on claims of First Amendment retaliation against Correction Officer Agusto in his individual capacity.

### D. Fourteenth Amendment Property Deprivation

Plaintiff alleges that Officer Agusto discarded some of his personal property.[26] Thus, the court reviews whether Plaintiff has alleged a plausible Fourteenth Amendment Due Process Clause violation.

"[T]he Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). Procedural due process analysis "proceeds in two steps: [a court] first ask[s] whether there exists a liberty or property interest of which a person has been deprived, and if so ... whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (per curiam). To the extent Plaintiff claims a property loss in violation of the due process clause, Plaintiff cannot state a plausible Fourteenth Amendment violation.

A prisoner can state a due process claim for the loss of property "only if the [s]tate provides no adequate post-deprivation remedy." *Edwards v. Erfe*, 588 F. App'x 79, 80 (2d Cir. 2015) (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)). Connecticut DOC and the State of Connecticut provide adequate remedies for an inmate who complains of lost or destroyed property. *Riddick v. Semple*, 731 F. App'x 11, 13–14 (2d Cir. 2018) (referencing administrative remedy pursuant to DOC Administrative Directive 9.6, claim pursuant to

---

[26] Compl. ¶ 33.

Conn. Gen. Stat. § 4-141, *et seq.* and common law intentional tort claim against individual employees); *Sherman v. Corcella*, No. 19-CV-1889, 2020 WL 4043178, at *17 (D. Conn. July 16, 2020). A prisoner may avail himself of his remedies for property loss under DOC Administrative Directive 9.6. *See* A.D. 9.6 (effective 4/30/2021). Further, under Connecticut General Statute § 4-141, *et seq.*, "a prisoner may bring a claim against the Connecticut Claims Commission unless there is another administrative remedy for [the prisoner's] claim." *Sherman*, 2020 WL 4043178, at *17. Accordingly, Plaintiff's due process claim against Defendant Officer Agusto for loss of property is dismissed as not plausible.

**E. Fourteenth Amendment Equal Protection Clause**

Plaintiff asserts several claims under the Fourteenth Amendment Equal Protection Clause.[27] Plaintiff alleges that when he complained through the chain of command about staff improperly engaging inmates into physical fights, DOC officials responded that his allegations could not be substantiated.[28]

Plaintiff advances Fourteenth Amendment claims (1) against Commissioner Carlos, Warden Doe 1, Deputy Warden Kenny, State Police Colonel Loughman, and DESPP Commissioner Higgins for failing to implement procedures for inmates to report DOC staff misconduct so that evidence may be preserved, and (2) against former Warden Reis for denying his grievance requesting DOC implement a procedure to report staff conduct so that evidence could be preserved and investigated.[29] He complains further that State Police

---

[27] Compl. ¶¶ 34-36, 38.

[28] Compl. ¶¶ 14-15.

[29] *Id.* ¶¶ 34-35.

Dispatchers John Doe 2 and Jane Doe violated his Fourteenth Amendment rights by failing to accept or document his criminal complaint against a correctional officer, thereby depriving him of a criminal investigation and meaningful access to equal protection of state and federal law.[30]

To state an equal protection claim, a plaintiff must allege facts showing that: (1) he or she was treated differently from similarly situated individuals and (2) that the discriminatory or different treatment was based on "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (internal quotation marks omitted) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609–10 (2d Cir. 1980)). A plaintiff must demonstrate evidence of "purposeful discrimination ... directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (citations omitted).

When a suspect classification is not at issue, the Equal Protection Clause still requires that individuals are treated the same as "similarly situated individuals." *Fortress Bible Church v. Feiner*, 694 F.3d 208, 221–22 (2d Cir. 2012). Thus, Plaintiff may bring a "class of one" equal protection claim "where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (citations omitted). In the Second Circuit, a class-of-one plaintiff "must show an extremely high degree

---

[30] *Id.* ¶¶ 36, 38.

of similarity between themselves and the persons to whom they compare themselves." *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (citation omitted). The similarity between the plaintiff and comparators provides "an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose—whether personal or otherwise—is all but certain." *See Witt v. Vill. of Mamaroneck*, No. 12-CV-8778 (ER), 2015 WL 1427206, at *5 (S.D.N.Y. Mar. 27, 2015) (quoting *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005)), *aff'd*, 639 F. App'x 44 (2d Cir. 2016).

Plaintiff's Fourteenth Amendment equal protection claims are not plausible. In the first instance, Plaintiff cannot premise a claim under 42 U.S.C. § 1983 on grounds that his complaints about staff misconduct were not adequately investigated or prosecuted. This is because Plaintiff does not have a "constitutional right to an investigation of any kind by government officials[,]" *Banks v. Annucci*, 48 F. Supp. 3d 394, 414 (N.D.N.Y. 2014) (citations omitted); *see also Leeke v. Timmerman*, 454 U.S. 83, 87 (1981) (inmates alleging beating by prison guards lacks standing to challenge prison officials' request to magistrate not to issue arrest warrants); *Harris v. City of New York*, 2023 WL 6542019, at *2 (S.D.N.Y. 2023) ("[C]ourts have consistently declined to find that crime victims or those close to them possess a constitutional right to a police investigation into those crimes."); *see also Linda R. S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("in American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another"); *Joyce v. Hanney*, No. 3:05cv1477 (WWE), 2009 WL 563633, at *9 (D. Conn. Mar. 4, 2009) (prisoner has no constitutional right to have defendants disciplined or prosecuted).

Further, sentenced inmates are not members of a protected or suspect class, *Gonzalez v. Hannah*, No. 3:19-cv-1522 (VLB), 2020 WL 3256869, at *8 (D. Conn. June 16, 2020) (citations omitted), and Plaintiff has not alleged facts to suggest that he was subject to disparate treatment from comparators due to any "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Diesel*, 232 F.3d at 103 (internal quotation marks omitted) (quoting *LeClair*, 627 F.2d at 609–10). Nor does Plaintiff allege facts to suggest that he was discriminated against as a "class of one" based on intentional disparate treatment from comparators without a rational basis for the difference in treatment. *Vill. of Willowbrook*, 528 U.S. at 564. No allegations support a claim that he was treated differently from any highly similar comparator.

Accordingly, Plaintiff's complaint fails to suggest any plausible Fourteenth Amendment equal protection violation.[31]

### F. Violations of State Law and Prison Directives and Regulations

Plaintiff asserts that he was subject to violations of state law and DOC policy or rules. But to state a § 1983 claim, Plaintiff "must establish that [he] w[as] deprived of a right

[31] To the extent Plaintiff's allegations may be read to assert that the supervisory defendants acted with deliberate indifference to his health and safety by failing to implement reporting procedures about staff misconduct, Plaintiff has not stated a plausible constitutional claim. Plaintiff's allegations amount to dissatisfaction with these supervisory defendants' responses to his complaints about past staff conduct but do not plausibly suggest that they violated the Constitution "through [their] own individual actions…." *See Burke v. Lamont*, No. 3:22-cv-00459 (JBA), 2022 WL 3997549, at *11 (D. Conn. Sept. 1, 2022) (explaining that, after *Tangreti*, "Personal involvement of a government official is not established 'by reason of [the official's] supervision of others who committed the violation,'" as supervisory defendant's "[m]ere awareness of an issue … is not sufficient to state a claim for supervisory liability" and" 'mere knowledge ...' is not sufficient because that knowledge does not amount the supervisor's violating the Constitution").

secured by the Constitution or laws of the United States." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49 (1999). Plaintiff's complaints about prison policy or rules and state law violations do not invoke violation of federal law. "[A] prison official's violation of a prison regulation or policy does not establish that the official has violated the Constitution or is liable to a prisoner under 42 U.S.C. § 1983." *Fine v. UConn Med.*, No. 3:18-CV-530 (JAM), 2019 WL 236726, at *9 (D. Conn. Jan. 16, 2019) (citation omitted). Accordingly, such allegations concerning violation of state law and prison policy or rules fail to state plausible claims under section 1983.

**G. Official Capacity Claims**

Finally, the court considers whether Plaintiff may proceed for official capacity relief in this action. A plaintiff may seek official capacity relief against a state official only to the extent that he alleges an ongoing violation of his constitutional rights for which a federal court may enter an order of prospective relief against that official in his official capacity. *See, e.g.*, *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)); *Silva v. Farrish*, 47 F.4th 78, 84 (2d Cir. 2022).

Here, Plaintiff moves for a preliminary injunction and temporary restraining order against DOC Commissioner Carlos, State Police Colonel Loughman, and DESPP Commissioner Higgins.[32] Specifically, Plaintiff seeks three injunctive court orders: (1) for defendants to "implement and enforce proce[]dures preventing unauthorized staff from bringing wireless communication devices, including but not limited to cellular telephones, smart watches, and smart glasses, into correctional facilities;" (2) for the Connecticut State

[32] Compl. ¶ 40; *see id.* pp. 21-26.

Police to "immediately investigate alleged violations of [C]onnecticut law involving the unauthorized possession or use of such devices within correctional facilities and pursue criminal charges when supported by probable cause, regardless of whether the violation is reported by an inmate or a member of staff;" and (3) for "[a]ppropriate procedures [to] be established to permit inmates to report alleged violations of Connecticut criminal statutes to the proper law enforcement authority without fear of retaliation[.]"[33]

The same standard applies for granting a temporary restraining order and a motion for a preliminary injunction. *Stoneway Capital Corp. v. Siemens Energy Inc.*, 2020 WL 764457, at *1 (S.D.N.Y. Feb. 14, 2020). Preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consolidated Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005); *see also Winter v. Natural Res. Def. Council*, *Inc.*, 555 U.S. 7, 24 (2008). "In the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons." *Fisher v. Goord*, 981 F. Supp. 140, 167 (W.D.N.Y. 1997). Injunctive relief afforded by a court must be narrowly tailored or proportional to the scope of the violation and extending no further than necessary to remedy the violation. *Brown v. Plata*, 563 U.S. 493, 531 (2011).

Plaintiff's requests for injunctive relief must be denied because he is not seeking prospective official capacity relief to remedy any plausible claim of ongoing federal violation proceeding in this case. Plaintiff's requests for injunctive orders to remedy state law

---

[33] *Id.* p. 21.

violations are clearly beyond the scope of any ongoing federal violation in this matter. *See De Beers Consol. Mines Ltd. v. United States*, 325 U.S. 212, 220 (1945) (preliminary injunction appropriate to grant intermediate relief of "the same character as that which may be granted finally," but inappropriate where the injunction "deals with a matter lying wholly outside of the issues in the suit"); *Torres v. UConn Health*, No. 3:17-CV-325 (SRU), 2017 WL 3713521, at *2 (D. Conn. Aug. 29, 2017) (preliminary injunctive relief not warranted because claim in motion was unrelated to underlying claims in complaint). Likewise, his third injunctive request for the DOC Commissioner to implement reporting procedures for staff misconduct does not seek a remedy for any ongoing constitutional violation proceeding in this matter. In his memorandum in support of his request for injunctive relief, Plaintiff explains that complaints of correctional staff misconduct handled by DOC internally are frequently ignored or deemed unsubstantiated without an investigation.[34] But as previously discussed, a prisoner has no constitutional right to an investigation. Although Plaintiff indicates implementation of reporting procedures curb correctional staff taking retaliatory conduct against reporting inmates, Plaintiff is only proceeding on claims of First Amendment retaliation against Officer Agusto based on two cell searches in the past. Plaintiff seeks injunctive orders to remedy conduct beyond the scope of any federal or constitutional violation here.

Furthermore, Plaintiff may not proceed against Officer Agusto—or any DOC employees at Cheshire—for any official capacity relief, including a declaratory judgment, because Plaintiff is no longer housed at Cheshire. *See Washington v. McKoy*, 816 F. App'x

[34] Compl. p. 26.

570, 572–73 (2d Cir. 2020) ("In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility.").

In addition, Plaintiff may not proceed for any damages against Defendants in their official capacity. This is because Defendants are state employees, and so the Eleventh Amendment bars the recovery of damages against them in their official capacities. *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

Accordingly, all claims against Defendants in their official capacities are dismissed as not plausible pursuant to 28 U.S.C. § 1915A(b)(2). The court denies Plaintiff's requests for preliminary injunction, temporary restraining order, and order to show cause.

## III. CONCLUSION

The court enters the following orders:

(1) Plaintiff may **PROCEED** with his claims of Eighth Amendment violation based on harassing cell searches against Officer Agusto in his individual capacity; and

**(2)** Plaintiff may **PROCEED** with his claims of First Amendment retaliation based on retaliatory cell searches against Officer Agusto in his individual capacity.

Within 45 days from the filing date of this Order, Plaintiff may file an amended complaint to correct the deficiencies of his claims as identified by this Initial Review Order. Plaintiff is advised that any amended complaint will completely replace the prior complaint filed in this action, and that no portion of any prior complaint shall be incorporated into his amended complaint by reference.

All other claims, including official capacity claims, are **DISMISSED**, and Plaintiff's requests for preliminary injunction, temporary restraining order, and order to show cause are **DENIED**.

The clerk is instructed to terminate the following individuals as defendants in this action: DOC Commissioner Sharonda Carlos, Cheshire Warden Reis (former), Cheshire Warden John Doe 1, Cheshire Deputy Warden Kenny, State Police Colonel Daniel Loughman, Department of Emergency Services ("DES") Commissioner Ronnell Higgins, State Police Dispatcher John Doe 2, and State Police Dispatcher Jane Doe

(3) The clerk shall verify the current work address of Correction Officer Agusto with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the Complaint to him at the confirmed addresses within **twenty-one (21) days** of this Order, and report on the status of the waiver request on the **thirty-fifth (35th) day** after mailing. If Defendant Agusto fails to return the waiver request, the clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on that defendant, and Defendant Agusto shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(4) The clerk shall send a courtesy copy of the Complaint and this Order to the DOC Office of Legal Affairs and Office of the Attorney General.

(5) Defendant shall file a response to the Complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If Defendant chooses to file an answer, Defendant shall admit or deny the allegations and respond to the cognizable claims recited above. Defendant may also include any and all additional defenses permitted by the Federal Rules.

(6) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed within **six months (180 days)** from the date of this Order. Discovery requests need not be filed with the Court.

(7) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(8) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this Order.

(9) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(10) If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(d) provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify Defendant or defendant's counsel of his new address.

(11) Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. Plaintiff is advised that the Program may be used only to file documents with the court. Local court rules provide that discovery requests are not filed with the court. D. Conn.

L. Civ. R. 5(f). Therefore, discovery requests must be served on Defendant's counsel by regular mail.

**SO ORDERED.**

Hartford, Connecticut
November 6, 2026

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge